IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

CHRISTOPHER D. BROWN,

        Petitioner,      :      Case No. 3:23-cv-305

  - vs -                         District Judge Michael J. Newman
                                  Magistrate Judge Michael R. Merz

WARDEN, London Correctional
  Institution,

                                            :
        Respondent.

## REPORT AND RECOMMENDATIONS

This is a habeas corpus case brought *pro se* by Petitioner Christopher Brown under 28 U.S.C. § 2254. On Order of Magistrate Judge Caroline H. Gentry, the Respondent filed the State Court Record (ECF No. 8) and a Return of Writ (ECF No. 9) and Petitioner has filed a Reply (ECF No. 10), making the case ripe for decision. The Magistrate Judge reference in the case was recently transferred to the undersigned to help balance the Magistrate Judge workload in this District (ECF No. 11).

**Litigation History**

On April 29, 2022, a Montgomery County Grand Jury indicted Brown on one count of robbery. A jury found Brown guilty as charged and he was sentenced to imprisonment for five to seven and one-half years. Brown appealed to the Ohio Court of Appeals for the Second District

1

raising assignments of error that his conviction was not supported by sufficient evidence and was against the manifest weight of the evidence. Both assignments were overruled and the conviction affirmed. *State v. Brown,* 2023-Ohio-645 (Ohio App. 2nd Dist. Mar. 3, 2023). Although the Ohio Supreme Court allowed Brown to file a delayed notice of appeal, it ultimately declined to exercise jurisdiction. *State v. Brown,* 170 Ohio St.3d 1448 (2023).

Brown filed his Petition in this Court on October 5, 2023, the date he placed it in the prison mailing system. He pleads one ground for relief:

> **GROUND ONE:** The Appellant was denied the right to Due Process and a Fair Trial in violation of the Fifth and Fourteenth Amendments of the US. Constitution, and Art. I Section 10 of the Ohio Constitution, when the conviction was not supported by Sufficient Evidence.

(Petition, ECF No. 3, PageID 29).

Respondent raises no procedural defenses but claims the Second District's decision is entitled to deference under the Antiterrorism and Effective Death Penalty Act of 1996 (Pub. L. No 104-132, 110 Stat. 1214)(the "AEDPA"). When a state court decides on the merits a federal constitutional claim later presented to a federal habeas court, the federal court must defer to the state court decision unless that decision is contrary to or an objectively unreasonable application of clearly established precedent of the United States Supreme Court. 28 U.S.C. § 2254(d)(1); *Harrington v. Richter*, 562 U.S. 86 (2011); *Brown v. Payton,* 544 U.S. 133, 140 (2005); *Bell v. Cone*, 535 U.S. 685, 693-94 (2002); *Williams (Terry) v. Taylor,* 529 U.S. 362, 379 (2000); *Hendrix v. Palmer,* 893 F.3d 906, 917 (6th Cir. 2018). Deference is also due under 28 U.S.C. § 2254(d)(2) unless the state court decision was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

An allegation that a verdict was entered upon insufficient evidence states a claim under the

Due Process Clause of the Fourteenth Amendment to the United States Constitution. *Jackson v. Virginia,* 443 U.S. 307 (1979); *In re Winship*, 397 U.S. 358 (1970); *Johnson v. Coyle*, 200 F.3d 987, 991 (6th Cir. 2000); *Bagby v. Sowders*, 894 F.2d 792, 794 (6th Cir. 1990)(en banc). In order for a conviction to be constitutionally sound, every element of the crime must be proved beyond a reasonable doubt. *In re Winship*, 397 U.S. at 364.

> [T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt . . . . This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence and to draw reasonable inferences from basic facts to ultimate facts.

*Jackson v. Virginia*, 443 U.S. at 319; *Smith v. Nagy*, 962 F.3d 192, 205 (6th Cir. 2020) (quoting *Jackson*). This standard "must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law." *Id.* (quoting *Jackson*, 443 U.S. at 324). This rule was recognized in Ohio law at *State v. Jenks*, 61 Ohio St. 3d 259 (1991). Of course, it is state law which determines the elements of offenses; but once the state has adopted the elements, it must then prove each of them beyond a reasonable doubt. *In re Winship, supra.* A sufficiency challenge should be assessed against the elements of the crime, not against the elements set forth in an erroneous jury instruction. *Musacchio v. United States*, 577 U.S. 237 (2016).

In cases such as Petitioner's challenging the sufficiency of the evidence and filed after enactment of the Antiterrorism and Effective Death Penalty Act of 1996 (Pub. L. No 104-132, 110 Stat. 1214)(the "AEDPA"), two levels of deference to state decisions are required:

> In an appeal from a denial of habeas relief, in which a petitioner challenges the constitutional sufficiency of the evidence used to convict him, we are thus bound by two layers of deference to groups who might view facts differently than we would. First, as in all sufficiency-of-the-evidence challenges, we must determine whether, viewing the trial testimony and exhibits in the light most

3

> favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. See *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979). In doing so, we do not reweigh the evidence, re-evaluate the credibility of witnesses, or substitute our judgment for that of the jury. See *United States v. Hilliard*, 11 F.3d 618, 620 (6th Cir. 1993). Thus, even though we might have not voted to convict a defendant had we participated in jury deliberations, we must uphold the jury verdict if any rational trier of fact could have found the defendant guilty after resolving all disputes in favor of the prosecution. Second, even were we to conclude that a rational trier of fact could not have found a petitioner guilty beyond a reasonable doubt, on habeas review, we must still defer to the state appellate court's sufficiency determination as long as it is not unreasonable. See 28 U.S.C. § 2254(d)(2).

*Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009).  In a sufficiency of the evidence habeas corpus case, deference should be given to the trier-of-fact's verdict under *Jackson v. Virginia* and then to the appellate court's consideration of that verdict, as commanded by AEDPA. *Tucker v. Palmer*, 541 F.3d 652 (6th Cir. 2008); *accord Davis v. Lafler,* 658 F.3d 525, 531 (6th Cir. 2011)(en banc); *Parker v. Matthews*, 567 U.S. 37, 43 (2012). Notably, "a court may sustain a conviction based upon nothing more than circumstantial evidence." *Stewart v. Wolfenbarger,* 595 F.3d 647, 656 (6th Cir. 2010).

> We have made clear that *Jackson* claims face a high bar in federal habeas proceedings because they are subject to two layers of judicial deference. First, on direct appeal, "it is the responsibility of the jury -- not the court -- to decide what conclusions should be drawn from evidence admitted at trial. A reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury." *Cavazos v. Smith*, 565 U. S. 1, ___, 132 S. Ct. 2, 181 L. Ed. 2d 311, 313 (2011) (per curiam). And second, on habeas review, "a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was 'objectively unreasonable.'" *Ibid*. (quoting *Renico v. Lett,* 559 U. S. ___, ___, 130 S. Ct. 1855, 176 L. Ed. 2d 678 (2010)).

*Coleman v. Johnson*, 566 U.S. 650, 651, (2012)(per curiam); *Parker v. Matthews*, 567 U.S. 37, 43

(2012) (per curiam). The federal courts do not make credibility determinations in reviewing sufficiency of the evidence claims. *Brooks v. Tennessee,* 626 F.3d 878, 887 (6th Cir. 2010).

In deciding this case, the Second District Court of Appeals applied the correct *Jackson v. Virginia* standard as it has been adopted in Ohio law in *State v. Jenks*, 61 Ohio St. 3d 259 (1991). It held

> {¶ 2} In April 2022, Amber Kilgore and her fiancé Michael Santana were residing in a homeless shelter located on Apple Street in Dayton. During the late night and early morning hours of April 7 and 8, 2022, Kilgore and Santana left the shelter and walked to visit two friends who were living in an abandoned parking garage in downtown Dayton. Upon arriving at the garage, Kilgore and Santana walked up a ramp to the sixth floor, where their friends were camped. The foursome played cards and listened to music. Later, Kilgore and Santana got into an argument and walked to the ground floor of the garage. Santana, who had possession of Kilgore's cell phone, left and walked down the street. Kilgore waited approximately 20 minutes before she walked back up the ramp to her friends' camp. Kilgore called out to her friends but received no response. Believing her friends to be asleep, Kilgore began walking back down the ramp.
>
> {¶ 3} When Kilgore reached the third floor of the garage, she noted a man holding a coffee cup. The man, using a "commanding" or "threatening" tone, told her to "come over here." Tr. p. 127. The man told Kilgore that he "owned" the garage, that she was "disrespectful," and that he would "teach [her] a lesson." *Id.* Kilgore continued to walk down the ramp, and the man started walking beside her. During the walk, he continued to call her disrespectful.
>
> {¶ 4} Once the pair reached the ground floor, the man ordered Kilgore to go into the garage ticket booth. Kilgore tried to walk around the man, but he blocked her from exiting the garage. The man then grabbed Kilgore's purse and began hitting her about the head. Eventually, Kilgore fell to the floor, and the man began to kick her while still trying to pull the purse away. Finally, the man gave a hard tug and Kilgore released the purse. The man stumbled backward, and Kilgore fled the garage.
>
> {¶ 5} Kilgore ran back to the homeless shelter and banged on the glass door, seeking entry. A security guard, Chris Schwieterman, unlocked the door and admitted Kilgore into the building.

Schwieterman, who stated that Kilgore looked frantic and scared, escorted her into an office where she related the attack to him. Kilgore then used the office phone to call Santana, who advised her to call the police. Kilgore then called the police and reported the attack.

{¶ 6} In the meantime, Schwieterman contacted another security officer and related information about the attack and a description of the suspect. The officer, Nicholas Reed, was on patrol at the time. Reed traveled to the parking garage, where he observed an individual matching the description relayed to him by Schwieterman. Reed drove his vehicle ahead of the man and pulled to the side of the road. He then observed the man brandish an item that appeared to be a gun. The man looked at Reed and asked, "what the f**k are you going to do?" Reed then drove around the corner, where he spotted two Dayton Police Department Officers. Reed informed the officers of his interaction with the suspect and requested the officers accompany him to the garage.

{¶ 7} Around the same time, Santana flagged down Dayton Police Department patrol officer Joshua Blankley. Santana stated that he had made an emergency call regarding an attack involving his fiancée. While Blankley was speaking with Santana, he overheard a radio dispatch concerning an armed suspect located at the abandoned garage.

{¶ 8} Blankley then met the other two officers and Reed at the garage. The group observed a light turn off in the ticket booth. The officers eventually removed a man, later identified as Brown, from the booth. The officers recovered Kilgore's purse which still contained her identification. The officers also discovered a metal barbell which Brown stated he carried for protection.

* * * * *

{¶ 15} At trial, Kilgore testified to the events set forth above. Specifically, she testified Brown hit her repeatedly while pulling her purse away from her. Kilgore further testified that she suffered cuts and bruises from the attack and that she had to go to the hospital because she experienced severe pain in her rib area. Finally, Kilgore made an in-court identification of Brown as her assailant.

{¶ 16} Kilgore's testimony, which was believed by the jury, was sufficient to sustain the conviction. Additionally, the evidence demonstrated that Brown was located by officers in the ticket booth of the abandoned garage where Kilgore's purse was subsequently

> found. Based upon this record, we conclude the State presented competent, credible evidence upon which a reasonable juror could rely in finding the elements of the offense were proven.
>
> {¶ 17} Further, the jury was made aware of the differing descriptions of the hat worn by the offender. We cannot say that the testimony of any of the witnesses was rendered inherently incredible because of the differing descriptions.
>
> {¶ 18} " '[T]he trier of fact is better situated than an appellate court to view witnesses and to observe their demeanor, gestures, voice inflections and to use those observations in weighing credibility.' " *State v. Jackson*, 2015-Ohio-5490, 63 N.E.3d 410, ¶ 50 (2d Dist.), citing *State v. Lewis*, 4th Dist. Scioto No. 01CA2787, 2002 WL 368625 (Feb. 25, 2002). Thus, we must give substantial deference to the jury, which had the opportunity to see and hear the witnesses.

*State v. Brown, supra.*

In his Traverse, Brown argues forcefully that these are not the true facts of the incident.

> The Response listed in [P2], that Kilgore and Santana went to the Parking Garage to play cards with friends that were camped there. Further stating that they walked to the sixth floor, via the ramp. The alleged victim failed to state and counsel failed to challenge the facts. This area is only used for drug use and homeless people. There were no lights or table and chairs. It is not plausible that they went there to play cards. The garage usually has about 8-10 people on each level. There were no tents or enclosed structures on the floors. She left because her and Santana were arguing and he took off with her phone. Further there was no electricity for plugging in a radio. However, they could have been listening to music through the phone.
>
> The Respondent fails to include the fact that Brown was a keeper of the property, at the request of the owner. Kilgore's friends on the sixth level were dealing drugs and Kilgore and Santana only came there for drugs. Brown was there to clean and reduce the drug traffic. Kilgore was roaming around when Brown confronted her. She was looking to score more drugs, mad at Santana, she sought the company of Brown, who she knew through her friend upstairs. They originally met on March 8, 2022. Brown only spoke to her because she was roaming around. It is not disputed that Brown gave her refuge in the office (ticket booth) on the ground level, because it was cold and Brown had a heater. The facts are in disputed [sic] between

7

> Kilgore and Brown. Kilgore was sitting in the booth with Brown when she heard the voice of Santana calling her name. It was at that point that she jetted out of the booth. Brown believes that she met up with Santana, started walking back to the shelter, when she realized that she left her purse. In an attempt to not further upset Santana, Kilgore made up the attack story. She returned to the shelter.

(Traverse, ECF No. 10, PageID 595-96).

Several observations about these recited facts are critical. First of all, Brown gives no record citation for any of them, although he has been furnished with a copy of the trial transcripts with PageID numbers and all parties were directed to make record references with those citations (See Order for Answer, ECF No. 4, PageID 42).

Much more importantly, these factual statements are made by Brown as of his own personal knowledge, but he did not testify, nor did the defense present any witnesses (Transcript, ECF No. 8-1, PageID 143). Even if Brown put all his statements of fact into an affidavit, the Court could not consider it. A habeas corpus court is limited to the record which was before the state courts when they decided the case. *Cullen v. Pinholster,* 563 U.S. 170 (2011); *Shinn v. Ramirez*, 596 U.S. 366 (2022).

Brown blames the jury's reliance on Kilgore's testimony on ineffective assistance of trial counsel. However, he never raised a claim of ineffective assistance of trial counsel in the Ohio courts and indeed has not pleaded one in his Petition.

As Respondent points out, the testimony of the victim alone is sufficient for conviction. The Sixth Circuit has long held that the testimony of the victim alone is constitutionally sufficient to sustain a conviction. *Tucker v. Palmer*, 541 F.3d 652 (6th Cir. 2008), *citing United States v. Terry*, 362 F.2d 914, 916 (6th Cir. 1966) ("The testimony of the prosecuting witness, if believed by the jury, is sufficient to support a verdict of guilty."); see also *O'Hara v. Brigano*, 499 F.3d 492,

8

500 (6th Cir. 2007) (holding that victim's testimony that habeas petitioner abducted her and raped her was constitutionally sufficient to sustain conviction despite lack of corroborating witness or physical evidence); *United States v. Howard,* 218 F.3d 556, 565 (6th Cir. 2000) (holding that even if the only evidence was testimony of the victim, that is sufficient to support a conviction, even absent physical evidence or other corroboration); *United States v. Jones*, 102 F.3d 804, 807 (6th Cir. 1996) (noting that there is sufficient evidence to support a conviction even if the "circumstantial evidence does not remove every reasonable hypothesis except that of guilt") (internal quotation marks omitted).

It is the jury's responsibility to resolve inconsistencies in a victim's testimony. The jury in this case resolved those inconsistencies in favor of a guilty verdict. Had Brown testified, it would also have been the jury's responsibility to resolve inconsistencies between his and Kilgore's stories. But he never gave the jury his own story to work with.

**Conclusion**

Based on the foregoing analysis, the Magistrate Judge respectfully recommends that the Petition be dismissed with prejudice. Because reasonable jurists would not disagree with this conclusion, it is also recommended that Petitioner be denied a certificate of appealability and that the Court certify to the Sixth Circuit that any appeal would be objectively frivolous and should not be permitted to proceed *in forma pauperis*.

October 2, 2024.

s/ *Michael R. Merz*
United States Magistrate Judge

**NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Because this document is being served by mail, three days are added under Fed.R.Civ.P. 6, but service is complete when the document is mailed, not when it is received. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. A party may respond to another party's objections within fourteen days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. #